21-1162 Ohio Nuclear-Free Network and Beyond Nuclear Petitioners v. U.S. Nuclear Regulatory Commission and United States of America Mr. Lodge for the Petitioners, Mr. Michael for the Respondents, Mr. Phan for the Interpreters Good morning, Council. Mr. Lodge, please proceed when you're ready. May it please the Court. I'm here representing the Ohio Nuclear-Free Network and the Beyond Nuclear Organization here in Tacoma Park. The legal issue here today is whether or not the National Environmental Policy Act provides, affords a claim or cause of action or means of objection to a Nuclear Regulatory Commission licensing proceeding that is not bounded by the Atomic Energy Act. It's our contention that NEPA, because of its commenting process, because of the fact that there are clear indicators that public involvement is essential, that NEPA affords an independent means of challenging the license request, the license amendment request in this particular case. We're here to confirm the public's role in some very consequential decisions that are being made, confronted with the specter of climate chaos, as well as the renewed, the renaissance, apparently, of consideration of nuclear power as a means of generating electricity, as well as a means of creating international commerce. There's a very obscure but very important decision that was made by the NRC to grant a license to Centris Corporation, a firm that is engaging or about to engage in the centrifuge development of a new type of nuclear reactor fuel. Therein is the difference. It's called High Assay Low Enriched Uranium, HALU for short. I will try not to inundate the court with acronyms, but HALU is to be enriched to just shy of 20 percent content of Uranium-235. Uranium-235 is, in some context, a weapon material, nuclear weapons material. The license actually allows Centris Corporation to exceed that 20 percent, roughly 20 percent threshold, and actually enrich as high as 25 percent. This material can be very attractive for trafficking, sabotage, theft, ultimately for the making or becoming the basis of nuclear weapons. Before you get too far down the road on the merits question about NEPA, there's a threshold question about whether we have jurisdiction over your petition because under the Hobbs Act, you need to be a party aggrieved. Yes. And there's this question about whether you're a party aggrieved, given that under the regulations, to actually have participated in the underlying administrative proceeding, something else had to happen besides the email that you sent. So can you speak to that question? Well, first of all, we provided 105 organizations, a cross-section of the United States Environmentalism and Anti-Weapons Organizations, signed a five-page single-spaced comment letter that we provided in March 2021. The Hobbs Act is pretty clear, according to Preston, much of which is from the D.C. Circuit, that the Hobbs Act doesn't, it doesn't defer to an agency's determination of who is a party, but requires the courts to make that decision. The Rayblatt decision, a 1997 D.C. Circuit decision, at page 24 of our brief, we discuss that the court discusses that if agencies were left to their own devices, they could simply deny the public or anyone who wants to seek judicial review by simply saying they're not parties, defining them as non-parties because they only submitted comments under NEPA and didn't. But there are certain procedures prescribed by the agency for intervening, right? There is a procedure for intervening. And it's permissible for them to adopt those procedures, right? I can't, I mean, I've looked all over and there's nothing that's impermissible about what they've done. There, well, it's not an APA, this is not a free floating APA action with your cause of action under NEPA. This is a, and you, I just looked at your complaint again, you are admittedly under the Hobbs Act. So you have to follow the procedures that are associated with a Hobbs Act challenge, which it seems to me includes complying with the agency's procedural obligations, which includes if you want to intervene in certain things you do and don't do, you're not in. Well, Your Honor, we believe that NEPA, under the Limerick Ecology Decision, first circuit decision from 1989, actually NEPA is held to be a separate statute, which is not bounded by the Atomic Energy Act. But in direct response to your question as to the AEA setting for the procedure, what the nuclear regulatory mission has done is they've created an adversary proceeding as to whether it is even allowable for one to raise a NEPA type of criticism of a plan. And the standards, the NRC has very proudly stated that their standards for granting intervention are strict by design. They certainly work well in keeping out many public interventions. And the fact that there is an AEA procedure does not foreclose legally or in common sense terms a comment, submission and subsequent litigation, if need be, based upon the National Environmental Policy Act. In fact, the only way that one can participate under NEPA, according to NEPA, is by comment. If you're a member of the public, we believe that the demand involved a request for a publicized environmental assessment. So this was not an EA FONSI, environmental assessment with a finding of no significant impact, was the NRC's conclusion after a completely non-public proceeding. It was initiated by a very obscure announcement sometime before the EA FONSI was published. But the point is, is there was no circulation consultation with other federal agencies, and there was no hosting of the environmental assessment for public comment as a precursor to ultimately making the decision they did. They found no significant impact and issued the license a week and a half later. Is there a reason that you couldn't have participated via the written request route that's set on the regulations? I know you have the argument that the agency doesn't get to define it. I get that. Of course, it's true that at the end of the day, the court has to decide whether you're a party agreed. But I'm just wanting to know as a practical matter, is there a reason that that route was unavailable? Other than the fact that we believe that it is largely an unattainable aspiration, the AEA process? No, sir. Correct. I mean, yes, it's unattainable. I'm really not following your argument. There's an intervention requirement, and you can petition to intervene. No, sir. The NEPA process is a separate type of proceeding. No, no, no. I understand NEPA can stand alone sometimes. The problem is you have, this is a Hobbs Act case, and you admittedly, you used the Hobbs Act to challenge the relicensing. That's what's really going on here. NEPA is among the objections that you want to bring to challenge the relicensing. But this is a Hobbs Act case. And so when I looked at the case law, there are certain requirements you have to follow, including the requirements that the agency has set forth for participating. And if you don't, then, and if they refuse to allow you in, it seems to me that's objectionable, and you could bring that question to court. That's not what you've done. In other words, if your argument is that we were not allowed, we were impermissibly denied the right to intervene to challenge this license, that's fine. You can raise that, and then you get an answer. That's not what's going on here. You're saying we don't have to intervene, and because NEPA in some situations is a standalone cause of action, 1331 is the way you use the APA. That's not what's happening here. This is a Hobbs Act case. And yes, but we believe that under the Hobbs Act, we participated, and according to D.C. Circuit precedent, that participation should be recognized making us a party. Okay. Thank you. Thank you, counsel. Mr. Michael. Good morning. I'm going to raise it. Good morning. May it please the court. This is a case about the NRC's decision to authorize a discreet, time-limited uranium enrichment project at the same location where the NRC previously authorized a significantly larger enrichment facility after preparing an 1,100-page environmental impact statement. Now, the petitioners have brought this Hobbs Act petition for review because they believe that this project is significant enough to warrant another environmental impact statement, but they voluntarily bypassed their opportunity to raise that argument before the NRC using the appropriate and available agency forum, which would be intervention in the underlying proceeding, an opportunity to which they are entitled by statute to pursue, and becoming a party in accordance with the agency's longstanding rules of procedure. That is the path that the petitioners were obligated to take if they wanted to preserve the possibility for this court's review and to properly exhaust their claims before the agency. That is the required path that Congress forged for them when it wrote the Atomic Energy Act and the Hobbs Act the way that it did. That's what the statutes say, limiting this court's jurisdiction to final orders of agency proceedings, and only parties agreed by those final orders may bring the Hobbs Act challenge. That's what this court has repeatedly said in Hobbs Act cases, like ACA International, Water Transport Association, Simmons v. ICC, all cited in our brief, where this court has made clear that where intervention is a prerequisite to participation, that that is the path you must take in order to bring the case under the Hobbs Act. And that's what the NRC's regulations say. They're unambiguous on this point. How does one become a party to an NRC licensing proceeding? You submit a written request for hearing that demonstrates you have standing, and that includes at least one admissible contention. Now, while I'm happy to address any questions the court may have on the merits of this case, what I'd like to do this morning is to focus on this jurisdictional question, because I'd like to elaborate for the court why this is such an important issue for the NRC. Because by asking the court to dismiss this petition for review, what we are really doing is asking this court to preserve the integrity of the NRC's administrative process and the hearing procedures and preserve the necessity for would-be parties and petitioners to follow those rules. Our concern here is bigger than this one case. If the petitioners here are permitted to seek judicial review under these circumstances, then it would call into serious question what purpose, if any, the agency's hearing procedures would continue to serve, if they could be bypassed ultimately without consequence. I think there are a number of NRC litigants who have played by these rules in the past who would be surprised to learn that all along there was a side door to judicial review that did not involve going through 10 CFR Part 2. Because that's what this case really is, and I think the reply brief exemplifies this. This is an attempt to bypass around 10 CFR Part 2, because the petitioners here do not like those procedures, and they think that they're too strict. I can address that in just a moment. But Congress tasked the NRC with the statutory obligation to make hearings available when it engages in licensing decisions, and the contention of admissibility standards in Section 2.309, which petitioners here object to, that is a deliberate policy decision by the Commission about how best to fulfill this statutory mandate to make hearings available. Can you go to the question of whether they're too strict? Because I take it that an agency does not have limitless authority to define the extent to which a party that's in fact an entity— or organization or individual who's in fact affected by regulatory action wants to bring a grievance before the agency. The agency can't say, well, you can do that, but you have to do it on leap day, you know, February 28th, February 29th. Got the count wrong? February 29th. Right, because then there's no opportunity at that point. So there's some constraints on what an agency can do. Absolutely, Your Honor. And to be clear, to respond to this point that my friends on the other side made, it is not our position that whatever the NRC puts into 10 CFR Part 2, however we define party, that is binding on this Court, full stop. That is not what we're saying. This Court has repeatedly over the years recognized the validity of the agency's hearing procedures. This goes back to at least as early as the 1990 Union of Concerned Scientists decision, which is cited in a brief. But there was a facial challenge to these very regulations, a facial challenge that they were not consistent with the ADA, they were not consistent with NEPA because of the requirements to bring NEPA contentions through the NRC's process as well. The Court upheld it there. This Court has upheld or at least tacitly implied the validity of these regulations throughout the years when it has heard Hobbs Act petitions, challenges to NRC, final orders where the NRC has enforced these standards, and the Court has upheld those challenges as reasonable. So it is not limitless, Your Honor, if the agency views its discretion somehow or find party in a way that was arbitrary and capricious, of course this Court would have the opportunity to step in. But what we're saying is under Hobbs Act and under this Court's many decisions interpreting the Hobbs Act where the Court has said if intervention is a prerequisite, you must intervene in order to obtain Hobbs Act reviews. Suppose they were to bring a freestanding action under NEPA only, which frequently happens. As long as you can meet the Lujan standing requirements, that's the hypothetical in Lujan, a person who is potentially affected by the action in question and does not think the agency followed NEPA can simply file a suit to challenge the agency's NEPA determinations. And they say in answer to your question, let's assume you raised it, you're really challenging the licensing. They say, no, we're not. We're challenging the NEPA determination, which is impermissible under the law, and we have standing to do it because we're affected parties, as in Lujan. We would be affected by this, and we're challenging. And they do that. I think as the petitioners themselves recognize on page one of their brief, this court has exclusive, not this court, the courts of appeals have exclusive jurisdictions to determine the validity of agency orders. You're not sticking with my hypothetical. They're not going after the relicensing order. They're going after the alleged failure of the agency to follow NEPA, which is not an unknown lawsuit. NEPA is an APA cause of action. It has nothing to do with the Hobbs Act. It's an APA cause of action, and parties bring it. There's a question. Does that mean you go to the district court? Can we disconnect from Hobbs, and can they raise the NEPA claim? I do not believe we can bifurcate the AEA aspect and the NEPA aspect. To the extent, in your hypothetical, the question is could they go to the district court and raise a standard NEPA challenge? And you say you don't think so. Why? Is there some case law you found? It's because the Court of Appeals, under the Hobbs Act, has exclusive jurisdiction to determine. We're not under that. Let's assume we're not challenging the licensing. We understand there was a licensing. We're challenging the agency's alleged failure to follow NEPA. But that challenge in your hypothetical, Your Honor, that challenge if it went to district court, they would still be challenging whether the license was properly issued. NEPA itself does not provide for its own cause of action. Yes, it does. It absolutely does. Do some research. That's clear. I mean, I was curious about this. It's an odd posture, and I spent a lot of time looking it up. NEPA absolutely is an APA cause of action. It's APA. Then the APA has the cause of action, not NEPA itself. Right. Yeah. And, Your Honor, that would be, as your hypothetical, I think if someone brought that challenge in the district court, so we're not challenging under the AEA, we're just challenging under NEPA. Right. And, again, we're in hypothetical territory here. The claim, I believe, that would be presented there was the NRC, when it issued the license, it acted arbitrarily and capriciously because it did not follow NEPA. Right. Yes. No, that's what I meant to pose. If I misstated a couple of statutes along the way, I'm sorry. That's exactly what I'm posing as a hypothetical. And if that is the challenge, then I believe we would argue is that that should be brought in the courts of appeals, because at the end of the day, that is a challenge to the validity of the agency's decision to issue the license, and under the Hobbs Act, the jurisdiction to determine the validity of agency orders. So you're saying they can't get out from under the Hobbs Act? I'm saying that in order. In other words, I mean, you could make the argument of the APA. They have an alternative remedy, and therefore they can't use the APA in the Hobbs Act context. That's a possible argument. I'm just trying to understand how you're setting this up in your mind, because there are many, many NEPA cases that simply arise under the APA. And yes, the claim is it's arbitrary, and it's inconsistent with what the law requires, because it didn't follow the commands. And that was the hypothetical in Lujan, which was a standing case. The courts have always understood that's possible to raise that NEPA challenge under an APA cause of action. I apologize. I'm repeating myself in trying to. You're saying they can't disconnect from Hobbs in this context. That's your argument. That is our argument. This court has exclusive jurisdiction to determine the validity of agency final orders in licensing proceedings. I have a question about the letter you all submitted about the extension going just another two months. We don't have a smoothness problem. Nobody's mentioned it, but this enhanced 235 goes to 2037. Is that right? I'm sorry. Could you repeat? Were those years? The contract, as I understand it, goes through 2037. This demonstration program ends in two months. I don't believe it. Just to answer your question about smoothness, we submitted the 28-J letter to at minimum alert the court that when it saw May 31st as the expiration date in the record that it had been extended. This is on paper. This is certainly a continuing dispute because the license authorizing activity is valid through November. What will happen beyond the end of November is unclear, and if there are any relevant updates, we will certainly. But does it become moot at the end of November? It depends on a number of factors that are unknown at this point, Your Honor. The contract expires in November. The agency's licensing, the authority to engage in the project under the NRC's license expires in November. If the interveners here, if the contract is extended, if they come in and submit a request to the NRC to extend their authorization to go beyond November, they may be asking to extend the exact same project. They may be asking to say the Department of Energy wants us to do something bigger or smaller. What goes on until 2037? The contract under the 10% uranium-235. I believe what Your Honor is referring to. They have a license to construct and operate a large-scale commercial facility enriching only up to at maximum 10%. They haven't built it, but that license, the authority for them to do that goes through 2037. This case is just about this discreet, initially three-year, now three-and-a-half-year project where they say, well, we would like to enrich up to 20%. The license says 25, but they're not permitted to extract anything above 20. But this is a discreet three-year project that is a three-year authorization, and currently that expires at the end of this November. Their authority to enrich above 10%, but that is unclear at this point. Beyond November, whether or not the project will expire, whether it will continue in the exact same form, whether they will request authority. Well, why doesn't that raise a mootness question, Dan? Because what the petitioners are upset about is the enhanced uranium-235. And that stops in two months. Currently, if nothing else changed, the license amendment, the authorization would expire at the end of this month. But we recognize there is at least still the possibility that it could be extended again. If it were to be extended again, would there necessarily be a request to the NRC to further extend it? And depending on what that request looks like, requesting to extend the status quo another year or what have it, or extending to do something larger, it will depend. Would these petitioners then have to satisfy the aggrieved party's requirement if you do extend it? Or before you extend it, actually? Again, I think it depends on if there is an extension request, what does it look like? Are they just asking to extend the status quo for another short period of time, in which case, you know, I don't know how mootness plays into there. We have this capable repetition, yet evading review mootness exception. If they're coming in and saying, you know, forget the three-year HALU project. We want to do something much bigger over a longer period of time. Here's our new license application. If that's something that is going to require a new NRC review, then they would, in my view, need to come in again. So can you say whether whatever is coming after November will require a new application? It will require a new application to go beyond what exists. And whether that requires new environmental review, it will depend on what they're asking, which at this point is unknown. Okay. And so they would seek intervention at that time? Certainly. And then for mootness purposes, even if we do get to a circumstance in which it might be moot, we still have the alternative route of the Hobbs Act. Because we have a choice as to if we thought that there wasn't jurisdiction under the Hobbs Act because challengers are not a party aggrieved, we wouldn't have to do mootness first. Correct.  to. You could dismiss on jurisdictional grounds today, Your Honor. They're not parties aggrieved as of the time they filed this. We could also do dismiss on Hobbs Act ground, even after we're hypothetically to become moot. If there's still a Hobbs Act problem, there's no requirement. If it were to become moot, there's no requirement that then we dismiss it on mootness grounds as opposed to on non-party aggrieved status grounds. I don't know that there's a requirement, Your Honor. We would take dismissal either way. I assume you would. Are there no further questions? Thank you. Thank you, counsel. Mr. Fagg. I'll use my brief time, I guess, to do two things. One, address as best I can the questions about the current status. And then secondly, talk about some of the questions the judge was raised, NEPA and alternatives. And on the current status, and again, with apologies for the sort of uncertainty here, but often when you deal with the Department of Energy, it's one step forward, two steps back. Essentially what government counsel said is correct. It was extended from May to November. It may well be extended again. But in terms of the amounts. What's being extended, this demonstration program? Yes, Your Honor. And I think counsel correctly described it. There is a sort of existing license for a massive plant, 11,000. This is 16. And these are things that spin, and they just spin a little longer and enrich the uranium. And so that's what this demonstration project is about. Currently, like I said, between now, work is going on on the ground now to install these things, and they're measuring that against the license. So as we stand here today on October 13th, it's not moving. What will happen after November 30th, again with apologies, is a little bit up in the air as we sit here today. Because the Department of Energy may or may not issue another RFP. There may or may not be increases to the amounts. But there's no indication it's going to be massive. But, again, the final point, if it is a significant or material change beyond what has been scoped by the NRC, there's another option. Well, what I don't understand is if you're not doing something about it now, I mean, do you think you'll finish all this by November 30th? Well, what's going on now, and I want to be clear, my understanding from my client is that they're not enriching the stuff now. So they're not actually dealing with it. It's all the preparatory work that's going into putting the equipment in place. And so that, you know, the enrichment itself, as I understand it, is not going to happen between now and November 30th. So, obviously, I think it's safe to assume there's going to be some sort of time extension, if not. If you all are building a centrifuge, and I don't understand about this cascading or whatever, I don't think I need to, that is geared to the enhanced uranium-235, you're building it, but you don't know whether you're going to be able to use that 235. Well, there's clearly an expectation. They're not doing it, I mean, with apologies for the uncertainty. But there's clearly an expectation that they're going to do it. That's why they're doing it. They're not just doing it because it's completely unknown. So I think that's another factor that sort of plays into why we don't think. You know, we have an interest in this current amendment to the license and why it's not moved. But, again, I want to be careful, because I don't want to misrepresent the court. I don't want to say for sure that it's going to happen, because I don't know what the Department of Energy is. And they're the ones who own this stuff, and they're the ones who are going to sort of grant the contract. So that's the best, and, again, with apologies to the court, that's the best I have on current status now, and we would reiterate the government's desire if material things happen. I also agree that jurisdictional dismissal is sort of separate. What do you have to say about the APA cause of action? And I think the answer to that, Your Honor, is what's the final action? And I think the government takes a position, and we agree with it, that an environmental impact statement or an EA is not a final action. It's not challengeable in and of itself, even at Lujan. It's challengeable through the APA as part of something that's going to become a final agency action, and that differs across different agencies, and it differs across different review schemes. Here, that's where the exclusive jurisdiction of the Hobbs Act becomes relevant in steps. And so that's what I think distinguishes the situation. We might have some other sort of agency that's in a district court saying, we don't think the environmental impact statement was sufficient, but that environmental impact statement, they're not challenging that. They're challenging the permit or the license or the lease or whatever that environmental impact statement went in through the APA in a district court action. That can't happen here with the NRC and with the Hobbs Act. And so I think that's why. Because the connection is to a statute that provides a remedy which would displace any request for a remedy under the APA, which are arguments. The APA is not going to be available if there is an alternative remedy available. I think that's fair. And you're saying in the Hobbs Act context, that's the end of it. Because you've got to go through the Hobbs Act. And this court, as government counsel said, has reiterated that a number of times going back to the Union of Concerned Scientists at Blue Ridge and all of that. So I see my time's up. I'm happy to answer your questions. Thank you very much. Thank you, counsel. Mr. Lodge, we'll give you two minutes for rebuttal. I'd just like to remind the court that the Brayblatt decision from the circuit essentially held that commenting in a rulemaking context confers party status. Also the Gage decision, Gage v. Atomic Energy Commission in 1973, the DC circuit stated that the Hobbs Act applies to proceedings where the public can participate only by commenting. We believe further that the Massachusetts v. U.S. decision, which was a 2008 First Circuit determination that we mentioned in the brief, recognized specifically, explicitly, NEPA commenting is a means of participation as a party and noted, the First Circuit noted that the NRC, quote, does not define the term party uniformly in its regulation. I'd also like to correct something that my colleague from the NRC indicated, and this is one of the reasons for our particular outrage at the way the NRC conducted this permitting, this licensing proceeding. The scope of the project as defined in the environmental assessment is actually a 13 and a half year contemplated project. There is the three, three and a half year initial startup period, more or less a demonstration type of effort to see what the feasibility is. And then I'm sure many technical tests would be confirmed or denied in the course of that kind of centrifuge development of HALU. However, it is very clearly stated as the scope of the licensing that centrist contemplates an additional 10 years of ramping up incrementally as market demands require to full scale commercialization. This is a 13 and a half year pivot into an entirely new fuel type. You heard the NRC admit that right now the constraint is 10% enrichment. The constraint in the new license, I believe, goes much higher than even the 25% that is admitted might be a possible production problem. Thank you. Well, let me ask you, Mr. Lodge, have you given any thought to when November 30th rolls around, if, and I'm not clear on what would be needed, but if something further would be needed and another amendment to license or something like that, have you given any thought to how you would challenge that? Well, we're happy to have come all the way to the District of Columbia to learn that piece of information this morning, Your Honor. We certainly will be looking. Well, let me say, assuming you're not at a group party now. Well, we're certainly going to be monitoring things closely. And if the result in this court is adverse to us, we will be pursuing our options possibly under the AEA as well as NEPA. But we firmly believe that NEPA is its own separate independent track, well-established by this circuit. Well, you may want to look without regard to what we're doing at the moment because our opinion may not come out the same time that additional proceedings happen here. Thank you. Okay. Thank you, counsel. Thank you to all counsel. We'll take this case under submission.
judges: Srinivasan, Henderson, Edwards